**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TRISHA HEIDRICH, ) | |
| ) | Case No. 21 C 04677 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| LFT CLUB OPERATIONS COMPANY, ) | |
| INC. d/b/a LIFE TIME FITNESS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues defendant for negligence. The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment [21]. For the reasons set forth below, the Court grants the motion. Judgment is entered in favor of Defendant LTF Club Operations Company, Inc. d/b/a Life Time Fitness ("defendant") and against Plaintiff Trisha Heidrich ("plaintiff").

**Facts[1]**

Trisha Heidrich, plaintiff, became a member of the Life Time Fitness facility, located at 451 Rolls Road, Algonquin, Illinois, operated by LTF Club Operations Company, Inc. ("LTF"), defendant, on January 16, 2020, when she signed a Member Usage Agreement. ECF 22 at 1. On August 4, 2021, plaintiff filed her complaint at law against defendant alleging negligence claims in the Circuit Court of the Twenty-Second Judicial Circuit – McHenry County, Illinois. ECF 21 at 2, 4. In the complaint, plaintiff alleges her foot was injured when it fell through a pool filter/grate as she exited the Club's swimming pool on January 27, 2020. ECF 22 at 1. Specifically, plaintiff alleges, "while exiting the zero depth swimming pool the pool filter/grate cover broke causing plaintiff's foot to fall through, get stuck and Plaintiff was caused to fall, striking the floor with great force and violence and sustaining serious and permanent injury[.]" ECF 22, Exhibit A at 2. Defendant filed its notice of removal on September 1, 2021 (*See* ECF 1) and subsequently filed this first amended motion for summary judgment arguing that the exculpatory clause in the Member Usage Agreement bars plaintiff's negligence claims (*See* ECF 21 at 2).

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the

---

[1] Unless noted otherwise, these facts are undisputed. *See* ECF 22 "Agreed to Statement of Undisputed Material Facts."

1

matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draws all inferences in favor of the non-moving party. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

This case was removed from the Circuit Court of the Twenty-Second Judicial Circuit – McHenry County, Illinois to this court based on diversity of citizenship; plaintiff is a citizen of Illinois and defendant is a citizen of Minnesota. *See* ECF 1 at 2-3. The defendant asserts and plaintiff does not contest that Illinois substantive law applies. ECF 21 at 2. *See also Musser v. Gentiva Health Services*, 356 F.3d 751, 754 (7th Cir. 2004) ("Federal courts sitting in diversity cases… apply the Federal Rules of Civil Procedure in procedural matters and the state substantive law that applies to the cause of the action.").

Defendant claims "there is no genuine dispute of material fact that the exculpatory clause applies and bars plaintiff's negligence claims." *Id.* The Supreme Court of Illinois instructs that "under certain circumstances exculpatory contracts may act as a total bar to a plaintiff's negligence claim [and]… 'public policy strongly favors freedom to contract.'" *Harris v. Walker*, 519 N.E.2d 917, 919 (1988) (quoting *McClure Eng'g Assocs., Inc. v. Reuben H. Donnelley Corp.*, 447 N.E.2d 400, 402 (1983)); *see also Garrison v. Combined Fitness Ctr., Ltd.*, 559, N.E.2d 187, 190 (Ill. App. Ct. 1990) ("courts should not interfere with the right of two parties to contract with one another if they freely and knowingly enter into the agreement."); *Cox v. U.S. Fitness, LLC*, 2 N.E.3d 1211, 1215 (Ill. App. Ct. 2013) ("Illinois permits parties to contract away liability for their own negligence.").

Under Illinois law, an exculpatory clause applies and is enforceable unless: "1) there is a substantial disparity in the bargaining power of the parties; 2) it would violate public policy to uphold the clause, or 3) 'there is something in the social relationship between the two parties that would militate against upholding the clause.'" *Titschler v. LTF Club Operations Co., Inc.*, No. 15-cv-0664, 2016 WL 1613545, *2 (N.D. Ill. Apr. 22, 2016) (quoting *Garrison v. Combined Fitness Center, Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct. 1990)).

In her response brief, plaintiff is silent on the exculpatory clause violating public policy, being the result of a substantial disparity in the bargaining positions of the parties, or that anything in the relationship between the two parties militates against upholding the clauses. *See* ECF 26. Seeing no opposition from plaintiff on these points, we need not decide whether public policy is offended by enforcing the exculpatory clause in the contract here or whether the relationship dynamic and power structure between the gym and its members suggests the exculpatory agreement should not be enforced.[2]

Absent any of these exceptions, "the question of whether or not an exculpatory clause will be enforced depends upon whether or not defendant's conduct and the risk of injury inherent in said conduct was of a type intended by the parties to fall within the scope of the clause." *Masciola v. Chicago Metro. Ski Council*, 628 N.E.2d 1067, 1071 (Ill. App. 1993). In other words, "'[t]he

---

[2] Regarding the enforceability of contracts between gyms and its members, this Court notes the Appellate Court of Illinois, First District found in *Owen v. Viv Tanny's Enterprises*, that there is no "special legal relationship and no overriding public interest which demand that this contract provision, voluntarily entered into by competent parties, should be rendered ineffectual." 199 N.E.2d 280, 282 (Ill. App. Ct. 1964).

2

foreseeability of a specific danger defines the scope' of the exculpatory clause, and the relevant inquiry is whether the Plaintiff knew or should have known the accident was a risk that was encompassed by [her] release." *Titschler*, 2016 WL 1613545 at *2 (citing *Cox*, 2 N.E.3d at 1216). Plaintiff argues that "the harm sustained by plaintiff was not a foreseeable risk associated with use of the pool so as to put it within the scope of possible risks or dangers set forth in the Member Usage Agreement; thus, rendering the exculpatory clause unenforceable." ECF 26 at 2. The issue at hand in defendant's motion for summary judgment, therefore, is whether the exculpatory clause in the contract between plaintiff and defendant is valid and enforceable on the basis of whether the type of injury plaintiff allegedly sustained was reasonably foreseeable and within the scope of possible risks or dangers in the exculpatory clause.

As the Illinois appellate court warns, "exculpatory clauses exempting liability for negligence are generally disfavored and are strictly construed against the party they benefit." *Cox*, 2 N.E.3d at 1215. As the court in *Garrison* explained:

> [A]n exculpatory clause, to be valid and enforceable, should contain clear, explicit, and unequivocal language referencing the type of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. In this way the plaintiff will be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution. The precise occurrence which results in the injury need not have been contemplated by the parties at the time the contract was entered into. It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff.

*Garrison*, 559 N.E.2d at 190 (internal citations omitted).

LTF's Member Usage Agreement signed by plaintiff contains sections entitled "Assumption of Risk" and "Waiver of Liability," which include the following provisions:

> **2. ASSUMPTION OF RISK.** I understand that there are **dangers, hazards, and risks of injury or damage, some of which are inherent, in the use of Life Time's premises, facilities, equipment, services, activities or products**… ECF 22, Exhibit 2 at 2.
>
> a. **Use of Premises and Services.** I understand that **use of Life Time's premises, facilities, equipment, services, activities or products**… can include… (1) use of indoor and outdoor pools… *Id.*
>
> b. **Risks.** I understand that the **dangers, hazards, and risks** of injury or damage in the Use of Life Time Premises and Services ("Risks") may include but are not limited to (1) **slips, trips, collisions, falls, and loss of footing or balance**… and (5) other accidents or incidents that may result in injury or damage to me… *Id.*

3

      c. **Injuries.** I understand that the **injuries or damages** may include but are not limited to **major or minor personal, physical, bodily… or other types of injuries or damages**… including but not limited to… torn or damaged muscles or ligaments, broken bones… bruises and scrapes… pain and suffering… and… any other… impairment, incapacity, injury or damage. *Id.*

I understand that Risks and Injuries in the Use of Life Time Premises and Services… **may be caused, in whole or in part, by the NEGLIGENCE OF LIFE TIME**… **I FULLY UNDERSTAND, AND VOLUNTARILY AND WILINGLY ASSUME, THE RISKS OF INJURY.** *Id.*

**3. <u>WAIVER OF LIABILITY</u>.** … I hereby voluntarily and forever **release and discharge Life time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims**… **for any Injuries** to me… **which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**… *Id.* at 3.

      a. **Negligence Claims.** I understand that Negligence Claims include but are not limited to Life Time's (1) negligent design, construction… repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition… *Id.*

I agree that this MUA, including without limitation the **ASSUMPTION OF RISK** [and] **WAIVER OF LIABILITY**… is intended to be as broad and inclusive as permitted under applicable law. *Id.* at 5.

**I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING SPECIFICALLY THE ASSUMPTION OF RISK** [and] **WAIVER OF LIABILITY**… **UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.** *Id.*

      In the instant case, plaintiff claims, "while exiting the zero depth swimming pool the pool filter/grate cover broke causing plaintiff's foot to fall through, get stuck and Plaintiff was caused to fall, striking the floor with great force and violence and sustaining serious and permanent injury[.]" ECF 22, Exhibit A at 2. Plaintiff argues that "the harm encountered was not one ordinarily associated with the activity of swimming so that plaintiff could have used a higher degree of caution so as to minimize the risk… [which was] not [one] normally associated with swimming or use of a pool." ECF 26 at 4. This Court disagrees. The language of the exculpatory clauses in LTF's Member Usage Agreement expressly defines risks to include "falls," and plaintiff acknowledged this risk in the "use of premises and services" which includes the "use of indoor and outdoor pools." ECF 22, Exhibit B at 2.

4

Although the Member Usage Agreement did not provide for the exact circumstance which resulted in plaintiff's injury, "the precise occurrence which results in the injury need not have been contemplated by the parties at the time the contract was entered into. It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff." *Garrison*, 559 N.E.2d at 190 (internal citations omitted). A fall at the pool is within the scope of dangers that may ordinarily accompany use of a pool, and it is thus within the reasonable contemplation of an ordinary person entering into an exculpatory agreement like the one plaintiff signed. *See Anast v. LTF Club Operations Co., Inc. et al*, 16-cv-08763, Doc #46 at 5. By reading the risks associated with the use of LTF premises, including the pool, plaintiff was put on notice of the range of dangers for which she assumed the risk of injury and could have minimized those risks by exercising a greater degree of caution. Accordingly, this Court agrees with defendant that "the exculpatory provisions to which Plaintiff agreed in this case clearly and unambiguously pertain to the alleged injuries Plaintiff claims as a result of her use of LTF's facilities." ECF 21 at 8.

Furthermore, plaintiff claims that defendant "carelessly and improperly failed to properly maintain… [and] inspect the swimming pool and specifically the pool filter/grate cover… to maintain an adequate maintenance program to ensure that the swimming pool and specifically the pool filter/grate cover was safe for patron use… used an inferior material for the pool filter/grate cover… and failed to warn members… of the unsafe conditions." ECF 22, Exhibit A at 3. However, as defendant describes in its reply brief, the language of the waiver of liability in LTF's Member Usage Agreement "specifically included a waiver of claims that include negligent design, repair and maintenance of the facility; negligent failure to [warn]³ of dangerous conditions; and negligent failure to keep the premises in a safe condition." ECF 27 at 2; *See* ECF 22, Exhibit 2 at 3. By signing the Member Usage Agreement, plaintiff "voluntarily and forever **release[d] and discharge[d] Life Time from**, covenant and **agree[d] not to sue Life Time for**, and **waive[d], any claims**… **for any Injuries** to [plaintiff]… **which arise[d] out of, result[ed] from, or [were] caused by any NEGLIGENCE OF LIFE TIME"** (ECF 22, Exhibit 2 at 3) as described above. The Court agrees with defendant that "by executing these provisions, Plaintiff contractually waived and released the very claims alleged in her Complaint at Law against LTF." ECF 21 at 8.

Plaintiff cites to *Larsen* v. *Vic Tanny International* 474 N.E.2d 729, 732 (Ill. App. Ct. 1984) in support of the proposition that "the harm encountered was not one ordinarily associated with the activity." ECF 26 at 4. In *Larsen*, the court found the enforceability of the exculpatory provision was not established as a matter of law because "the question of whether defendant's conduct and the danger to which plaintiff was subjected was of a type intended by the parties to be excused by the exculpation clause in plaintiff's membership contract present[ed] a genuine issue of fact which [could not] be resolved by the evidence of record." *Larsen*, 474 N.E.2d at 732. *Larsen* is readily distinguishable from this case. In *Larsen*, the plaintiff "alleged that he had been injured when a combination of chemicals used at the defendant fitness center had caused him to inhale hydrochloric acid vapors." *Titschler*, 2016 WL 1613545 at *4 (referencing *Larsen* 474 N.E.2d at 730-31). Just as the Court in *Titschler* found the facts in *Larsen* were not applicable to a case where plaintiff's injury resulted from the malfunctioning of a piece of exercise equipment, they are also not applicable to the facts in the instant case relating to a fall at the pool. As the court explained in *Titschler*, "it is not reasonable to expect that a person will be exposed to a dangerous mixture of chemicals during their

---

³ The defendant erroneously uses the term "warm" in its reply brief. *See* ECF 27 at 2. The correct term in the contract is "warn." *See* ECF 22, Exhibit 2 at 3.

workout." *Id.* The same cannot be said about falling while exiting a swimming pool, a risk of which any swimmer is keenly aware.

Plaintiff's reliance on *Hawkins v. Capital Fitness, Inc.* 29 N.E.3d 442 (Ill. App. 2015) is similarly distinguishable to the case at hand. In *Hawkins*, plaintiff claims he was allegedly injured when a mirror hanging from the wall fell on him while doing an exercise with weights. 29 N.E.3d at 445. Like *Larsen*, the court held that "we cannot conclude, as a matter of law, that the risk of a mirror falling on a patron ordinarily accompanies the use of a fitness facility…. [and] a genuine issue of fact arises as to whether the exculpatory clause in the membership agreement includes a potential injury due to a mirror falling off a wall." *Id.* at 450-51. In coming to this conclusion, the court compared the facts in *Hawkins* to those in cases such as *Garrison*, 559 N.E.2d 187 and *Owen*, 199 N.E.2d 280, where "the injuries occurred while the plaintiffs engaged in activities ordinarily associated with, engaged in, and performed at the facility at which they were injured." *Id.* at 449. While it is true that many gyms have mirrors in the workout area to assist members in assessing their exercise form, injuries caused by a mirror falling on a gym member arguably is not "within the scope of possible dangers ordinarily accompanying" working out. *Garrison*, 559 N.E.2d at 190. The same cannot be said as to the cause and nature of plaintiff's injuries.

In the instant case, unlike *Larsen* and *Hawkins*, it is foreseeable that an individual may suffer an injury resulting from negligent design, repair and maintenance of a pool filter/grate causing that individual to fall at the pool, a facility of the gym, which LTF's exculpatory agreement specifically mentions. The plaintiff's "injury was of a type that would normally be contemplated by the parties at the time the contract was made and therefore, it clearly falls within the parameters of the exculpatory clause." *See Garrison*, 559 N.E.2d at 190 (finding summary judgment for the defendant as plaintiff was "aware of the attendant dangers in the activity" using machinery by defendant gym and "the injury [plaintiff] sustained clearly falls within the scope of possible dangers ordinarily accompanying the activity of weight-lifting.").

Plaintiff also cites to *Calarco v. YMCA of Greater Metro. Chicago*, 501 N.E.2d 268, (Ill. App. Ct. 1986) arguing that "the court… held that in strictly construing the language [of the signed membership form, it] was not sufficient to show an intention for the defendant to be protected for liability under the circumstances in which plaintiff was injured" in support of its position that "summary judgment is not appropriate when the harm suffered was not one contemplated by the waiver." ECF 26 at 3. However, the language in the membership form in *Calarco* covered a release "for damages… arising out of or connected with… participation in *any of the activities of the YMCA of Metropolitan Chicago*." *Calarco*, 501 N.E.2d at 269-70 (emphasis added). The court described how this language was too broad to bar the plaintiff's claims for injuries sustained when metal weights fell on plaintiff's hand while she was assisting an individual using machinery. *Id.* at 272-73. Unlike the vague language in the membership form in *Calarco*, the LTF Member Usage Agreement signed by plaintiff in the instant case contained detailed and specific descriptions of the risks and injuries for which plaintiff was put on notice as well a specific waiver of liability for LTF's negligent design, maintenance, and monitoring of LTF's premises, failure to warn, and failure to keep premises in a reasonably safe condition. *See* ECF 22, Exhibit 2 at 3. The scope of possible risks and dangers defined in this executed agreement clearly and unambiguously cover the type of injury plaintiff allegedly sustained, and therefore, bars plaintiff's claims in the instant case.

The injury suffered by plaintiff is the type of risk the plaintiff knew or should have known was encompassed by the terms of the release in the executed Member Usage Agreement, as a matter of law. Thus, the exculpatory clause is enforceable, and the plaintiff has waived liability as to the negligent conduct by LTF that proximately caused her foreseeable alleged injury at the pool. The defendant is entitled to summary judgment.

## Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment [21]. Judgment is entered in favor of defendant and against plaintiff.

**SO ORDERED.**                    ENTERED: June 7, 2022

**M. David Weisman**
**United States Magistrate Judge**